# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**SHERRI LYNN FETHEROLF,**

      **Plaintiff,**

**-vs-**                                                          **Case No. 6:15-cv-836-Orl-DAB**

**COMMISSIONER OF SOCIAL SECURITY,**

      **Defendant.**

_____

## MEMORANDUM OPINION AND ORDER

This cause came on for consideration without oral argument on review of the Commissioner's administrative decision to deny Plaintiff's application for disability insurance benefits. For the reasons set forth herein, the decision of the Commissioner is **AFFIRMED.**

## Procedural History

Plaintiff applied for benefits, alleging she became disabled September 1, 2011 (R. 167-69). The agency denied Plaintiff's application initially and upon reconsideration, and she requested and received a hearing before an administrative law judge ("the ALJ"). On July 22, 2014, the ALJ issued an unfavorable decision, finding Plaintiff to be not disabled through that date (R.20-47). The Appeals Council declined to grant review (R. 1-3), making the ALJ's decision the final decision of the Commissioner. Plaintiff timely filed her Complaint (Doc. 1), the parties consented to the jurisdiction of the undersigned magistrate judge, and the matter is fully briefed and ripe for review pursuant to 42 U.S.C. §405(g).

## Nature of Claimed Disability

Plaintiff claims to be disabled due to depression, bipolar disorder, anxiety, radiculopathy, fibromyalgia, mitral valve prolapse, irritable bowel syndrome, pulmonary hypertension, herniated discs, and tachycardia (R. 192, 271-72, 277).

*Summary of Evidence Before the ALJ*

Plaintiff was thirty three years old at her alleged disability onset date (R. 167), with a high school education and certification as a certified nursing assistant, and past relevant work as a cashier, cashier supervisor, stock clerk, front-end store manager, liquor store manager, and cashier checker (R. 52, 74-75, 183, 193-94, 292).

In the interest of privacy and brevity, the medical evidence relating to the pertinent time period will not be repeated here, except as necessary to address Plaintiff's objections. In addition to the medical records and opinions of her healthcare providers, the record includes the testimony of Plaintiff and a Vocational Expert; written forms and reports completed by Plaintiff and her husband; and opinions from state agency consultants.

By way of summary, the ALJ determined that the claimant has the following severe impairments: Cervical Spine Disc Herniations; Lumbar Spine Disc Bulge; Chronic Bilateral L5-Sl Radiculopathy; and Lumbar Degenerative Disc Disease (20 CFR 404.1520(c)) (R. 26-7), but does not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (R. 27). The ALJ next found that Plaintiff had the residual functional capacity ("RFC") to:

> perform light work as defined in 20 CFR 404.1567(b) except as herein identified. The claimant can lift and/or carry no more than 20 pounds occasionally and 10 pounds frequently. The claimant can stand and/or walk at least 6 hours in an 8-hour day. The claimant can sit at least 6 hours in an 8-hour day. The claimant can push and pull the same amount as for lift and carry. The claimant can frequently crouch and crawl. The claimant can occasionally stoop, and climb stairs, ramps, ladders, and scaffolds. The claimant needs to avoid concentrated exposure to extreme heat, vibration, unprotected heights, and dangerous equipment.

(R. 27-8).

Relying on the assistance of the Vocational Expert, the ALJ determined that Plaintiff could perform her past relevant work, and was therefore not disabled (R. 40-1).

**Standard of Review**

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – *i.e.,* the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord, Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

## Issues and Analysis

Plaintiff asserts that the ALJ erred in 1) determining that Plaintiff has the RFC to perform light work after failing to adequately consider and weigh all of the pertinent evidence, and not providing the appropriate weight to the opinion of the treating physicians and 2) in finding that the claimant was "not entirely credible" when the record reveals that the Plaintiff suffered from documented impairments causing significant limitations. The Court examines these issues in the context of the sequential assessment used by the ALJ.

*The five step assessment*

The ALJ must follow five steps in evaluating a claim of disability. *See* 20 C.F.R. §§ 404.1520, 416.920. First, if a claimant is working at a substantial gainful activity, he is not disabled. 29 C.F.R. § 404.1520(b). Second, if a claimant does not have any impairment or combination of impairments which significantly limit his physical or mental ability to do basic work activities, then he does not have a severe impairment and is not disabled. 20 C.F.R. § 404.1520(c). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, he is disabled. 20 C.F.R. § 404.1520(d). Fourth, if a claimant's impairments do not prevent him from doing past relevant work, he is not disabled. 20 C.F.R. § 404.1520(e). Fifth, if a claimant's impairments (considering residual functional capacity, age, education, and past work) prevent him from doing other work that exists in the national economy, then he is disabled. 20 C.F.R. § 404.1520(f). The plaintiff bears the burden of persuasion through step four, while at step five the burden shifts to the Commissioner. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). Here, the ALJ made his decision at the fourth step and, therefore, Plaintiff had the burden at all relevant times.

*Evaluating Medical Evidence*

The Eleventh Circuit has held that whenever a physician offers a statement reflecting judgments about the nature and severity of a claimant's impairments, including symptoms, diagnosis, and prognosis, what the claimant can still do despite his or her impairments, and the claimant's physical and mental restrictions, the statement is an opinion requiring the ALJ to state with particularity the weight given to it and the reasons therefor. *Winschel v. Comm'r, Soc. Sec. Admin.*, 631 F.3d 1176, 1178–79 (11th Cir. 2011) (citing 20 CRF §§ 404.1527(a)(2), 416.927(a)(2); *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987).) When evaluating a physician's opinion, an ALJ considers numerous factors, including whether the physician examined the claimant, whether the physician treated the claimant, the evidence the physician presents to support his or her opinion, whether the physician's opinion is consistent with the record as a whole, and the physician's specialty. *See* 20 C.F.R. §§ 404.1527(c), 416.927(c).

Substantial weight must be given to the opinion, diagnosis and medical evidence of a treating physician unless there is good cause to do otherwise. *See Lewis v. Callahan*, 125 F.3d 1436 (11th Cir. 1997)*; Edwards v. Sullivan*, 937 F.2d 580, 583 (11th Cir. 1991); 20 C.F.R. § 404.1527(d). Good cause for disregarding an opinion can exist when: (1) the opinion is not bolstered by the evidence; (2) the evidence supports a contrary finding; or (3) the opinion is conclusory or is inconsistent with the source's own treatment notes. *Lewis,* 125 F.3d at 1440. By contrast, a consultative examiner's opinion is not entitled to the deference normally given a treating source. *See* 20 C.F.R. § 404.1527(c)(2); *Crawford v. Comm'r, Soc. Sec. Admin.*, 363 F.3d 1155, 1161 (11th Cir. 2004) (noting a one-time examiner's opinion is not entitled to great weight). Nonetheless, all opinions, including those of non-treating state agency or other program examiners or consultants, are to be considered and evaluated by the ALJ. *See* 20 C.F.R. §§ 404.1527, 416.927, and *Winschel*.

Plaintiff contends that the ALJ failed to weigh the opinions of her orthopedist, Dr. Datta; failed to properly credit the opinions of her general practitioner, Dr. Mora; and gave too much credit to the opinion of the non-examining state agency physician. Upon review, the Court finds no reversible error.

*Dr. Datta*

Plaintiff treated with Dr. Devin Datta, an orthopedic specialist, from November, 2012 through March, 2013 (R. 848-857). As summarized by the ALJ in her decision:

> On March 18, 2013, orthopedist Devin Datta, M. D. examined the claimant for low back pain. (Exh. 18F at 1 - 2). X-rays showed an overall loss of lumbar lordosis over the lumbar spine and at L5-Sl, there was a loss of disk space and height without any acute spondylolisthesis or fractures. Dr. Datta's diagnoses were lumbar disk degeneration at L5-Sl with loss of lordotic curve, persistent and continued lumbar radiculopathy, and history of herniated nucleus pulposus at L5-Sl with debilitating pain. Dr. Datta noted that the claimant had failed all conservative therapies including medications, injection based therapy, and physical therapy. The claimant was willing to proceed forward with surgery, i.e. a T-lift at L5-Sl with consideration for a laminectomy and fusion. Dr. Datta indicated that cardiac clearance was necessary beforehand.

(R. 36-37).

Although the ALJ reviewed and summarized Dr. Datta's notes, she did not explicitly list the weight (if any) she accorded the opinions contained within them. Plaintiff contends that this omission violates *Winschel*, and, as no explicit weight was given, the case must be remanded. Upon review, the Court agrees that the ALJ did not comply with *Winschel,* but finds the error to be harmless.

This is not a case where treatment notes or opinions were overlooked by the ALJ.  In addition to the summary of the treatment in the administrative decision, the ALJ elicited testimony about Dr. Datta's treatment and recommendations, and Plaintiff's decision to end treatment with him, at the administrative hearing:

> Q. Okay. The B.A.C.K. Center, when was the last time, then, that you had seen Dr. Datta?
> A I can't give you exact date. I'm not even sure. It could have been six months to a year ago, I'm not positive on it.
> Q Why did you stop seeing Dr. Datta?
> A Because I was in so much pain I couldn't walk, I couldn't get out of bed and I had my husband take me to the office and they didn't do anything other than give me a shot. So, I had to endure a whole excruciating ride all the way up there and back home for nothing.
> Q Dr. -- to the, to The B.A.C.K. Center?
> A Yes, ma'am.
> Q Okay. Did they explain why?
> A They pretty much told me that I had to go through all certain things for insurance. They needed a cardiac release, just a bunch of other stuff. I, I don't --
> Q You weren't willing to go through that or, or what was -
> A Yes, I was --
> Q -- going on?
> A I wanted to, but I physically couldn't. I couldn't go at that time.
> Q You couldn't go where?
> A To the cardiologist.
> Q Did you ever go and see the cardiologist after that?
> A Yes, I did.
> Q And what happened? Did you get a release there that you can go get the treatment at The B.A.C.K. Center?
> A No, I didn't. I went to get a follow-up with a cardiologist. I didn't go as far as getting the, the paper to be released to have surgery because I hadn't seen Dr. Datta within the time that I went. And then by that time I had medical bills that had accumulated and I couldn't pay for them.
> Q You couldn't pay for the medical bills that you had?
> A Yes, ma'am.
> Q So, I'm assuming this is something that was not covered by Medicaid?
> A I had share-of-cost Medicaid at that time.

> Q All right. And no thought to have gone back to Dr. -- at The B.A.C.K. Center any time after that?
> A No, because nobody was helping me.
> Q When you say nobody was helping you --
> A Yeah, no one was helping me except for my, my family doctor, which is Dr. Mora. I mean, they told me in the -- Dr. Datta's office told me that I could go get a release, but I was in so much pain I couldn't even stand up. And they said that they don't like to take you to the hospital and have it done because the hospitals don't like that.
> Q They don't like -- the hospitals don't like what?
> A To have a person admitted for back surgery and then have all of the, the testing and stuff done there for the cardiologist.

(R. 63-65).

While the notes indicate an opinion that Plaintiff's back impairment was severe enough to warrant surgery at that time, the ALJ did not ignore these notes and Plaintiff does not identify any particular limitation in them that was not adequately considered. Indeed, Dr. Datta opined that, with surgery: "The goal will be by *six months* to return to work and increase activity." (R. 853-emphasis added). However, as the ALJ noted, even without surgery, Plaintiff's back issues improved after the last visit of March 2013,[1] and, as reflected in the treatment notes of Dr. Mora, Plaintiff was deemed to be stable on the pain medication he prescribed.

Under these circumstances, as Dr. Datta did not provide any work related limitations that directly contradict the ALJ's ultimate findings, the error in not explicitly assigning weight to Dr. Datta's opinions is harmless. *See Hunter v. Comm'r of Soc. Sec.*, 609 F. App'x 555, 558 (11th Cir. 2015) ("To the extent that the administrative law judge erred by failing to state with particularity the weight assigned to Drs. Homra's and Kulick's medical opinions, the error is harmless because it did not affect the administrative law judge's ultimate determination."); *Tillman v. Comm'r, Soc. Sec. Admin.*, 559 Fed.Appx. 975, 975–76 (11th Cir. 2014) (recognizing harmless error analysis in the context of an ALJ's failure to address a treating source's opinion and concluding that "when the ALJ's error did not affect its ultimate findings, the error is harmless, and the ALJ's decision will stand");

---

[1] "Physical examinations performed on September 23, 2013 and December 6, 2013 revealed that the claimant had a normal gait. (Exh. 20F at 8 & 14) Musculoskeletal examinations performed on September 23, 2013, December 6, 2013, January 21, 2014, and February 21, 2014 revealed normal symmetry, tone, strength, and range of motion. (Id. at 3, 5, 8, & 14)." (R. 27).

*Caldwell v. Barnhart*, 261 Fed.Appx. 188, 191 (11th Cir. 2008) (finding that the ALJ's failure to state the weight given to a physician's opinions was harmless error because the opinions did not otherwise contradict the ALJ's findings); *Wright v. Barnhart*, 153 Fed.Appx. 678, 684 (11th Cir. 2005) (finding harmless error for the ALJ's failure to explicitly state what weight he afforded to a number of physicians' medical opinions when the opinions did not directly contradict the ALJ's findings).

*Dr. Mora*

Plaintiff next contests the ALJ's findings with respect to her treating physician, Dr. Mora. Dr. Mora issued several opinions that Plaintiff had significant restrictions. In May 2012, he "certif[ied]" that Plaintiff could not work due to panic attacks, post-traumatic stress disorder, generalized anxiety disorder and chronic back pain treated with low-dose narcotics (R. 858). In August 2012, he completed a physical capacities evaluation in which he indicated that Plaintiff could lift 5 pounds occasionally; could sit 1 hour during an 8-hour day; and had *no* ability to stand or walk, push or pull adequately, use her left knee for repetitive movements, climb, balance, stoop, kneel, crouch, crawl, or reach above shoulder level (R. 820-21). Dr. Mora further indicated Plaintiff was severely restricted from activities involving unprotected heights; moderately restricted for activities involving moving machinery, driving, and exposure to pulmonary irritants, and mildly restricted for activities involving exposure to temperature extremes (R. 821). Dr. Mora added that Plaintiff's restrictions would "be expected to last until at least [September] 2012," and that her pain due to cervical and lumbar disc herniation with pinched nerves and fibromyalgia was disabling and would preclude full-time work (*Id.*). Dr. Mora further opined that Plaintiff's mental functioning was significantly limited (R. 825-6).

The ALJ assigned "little weight" to the opinions of Dr. Mora, noting that he is not a specialist in orthopedics, rheumatology, or mental health; his assigned limitations are inconsistent with the results from many physical and mental status examinations; his orthopedic and mental health restrictions do not account for the subsequent improvement that the claimant experienced; and he opined the restrictions were only expected to last for one month (R. 35). Plaintiff contends that the

-8-

reasons identified are inadequate because Dr. Mora's opinion is consistent with the objective findings of the medical testing and the physical examinations, and he did not say the limitations were *only* to last for a month, but indicated that the restrictions were "expected to last *until at least* 9/20/2012." While the Court agrees that there is no support for a finding that the restrictions were only expected to last for a month, the ALJ adequately cited to other valid reasons[2] for discounting the opinion of disability, and, as those reasons are supported by substantial evidence,[3] remand is not appropriate.

*Dr. Molis*

Plaintiff next asserts that it is not clear why the ALJ assigned great weight to the opinion of the non-examining state agency physician (R. 34), as Dr. Molis reviewed the records on July 17, 2012, and there was evidence after that date that he did not consider. This contention, while true, is not dispositive. All of the opinions reviewed by an ALJ necessarily pre-date the administrative decision and, unless otherwise stated, pertain to the time period in which they were made. The weight to be given a non-examining physician's opinion depends, among other things, on the extent to which it is supported by clinical findings and is consistent with other evidence. *Poellnitz v. Astrue*, 349 F. App'x 500, 502 (11th Cir. 2009). Here, the ALJ did not rely solely on Dr. Molis' opinion in reaching her decision; the post-July 2012 evidence, including the records showing improvement in Plaintiff's back condition, was discussed throughly by the ALJ and the ALJ found Dr. Molis' opinions to be consistent with the *record as a whole*. As this finding is supported by the substantial evidence cited, the Court finds no error.

*Credibility*

---

[2] The ALJ is entitled to consider the area of specialization in weighing a physician's opinion, 20 C.F.R. § 404.1527(c)(5) (listing specialization among the factors ALJs will consider in deciding the weight due an opinion), and to consider consistency with other records, 20 C.F.R. § 404.1527(c)(4) (listing consistency with the record as a whole among the factors ALJs will consider in deciding the weight due an opinion).

[3] The ALJ's decision is particularly detailed and the Court need not set forth here a full recitation of the inconsistencies she describes. *See* R. 26-40.

A claimant may seek to establish that he has a disability through his own testimony regarding pain or other subjective symptoms. *Dyer v. Barnhart,* 395 F.3d 1206, 1210 (11th Cir. 2005). "In such a case, the claimant must show: (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain." *Id.* Where an ALJ decides not to credit a claimant's testimony about pain or limitations, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding. *Jones v. Department of Health and Human Services*, 941 F.2d 1529, 1532 (11th Cir. 1991) (articulated reasons must be based on substantial evidence). A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record. *Foote,* 67 F.3d at 1562.

Here, the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause her alleged symptoms; however, the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision" (R.30). Plaintiff claims this language is unacceptable "boilerplate." While the Court would agree, if this was the only rationale articulated, Plaintiff ignores that the ALJ provided a thorough and *specific* credibility finding, several pages in length (R. 38-40). The ALJ identified treatment records inconsistent with each allegation of disabling impairment; noted that Plaintiff was returned to work by two treating providers; identified Plaintiff's occasional noncompliance with treatment; and detailed Plaintiff's description of active daily activities,[4] among

---

[4] Although not dispositive, a claimant's activities may show that the claimant's symptoms are not as limiting as alleged. *See* 20 C.F.R. § 404.1529(c)(3)(i); SSR 96-7p; *see also Moore v. Barnhart,* 405 F.3d 1208, 1213 (11th Cir. 2005) (noting that "[t]he ALJ's RFC determination also drew on findings of an inconsistency between Moore's own testimony as to her daily activities and her claims of impairment.").

other things.[5] As these ample findings are supported by substantial evidence, the ALJ complied with the appropriate legal standard.

Plaintiff contends that she has a long-standing issue with pain that is well-documented in the medical records. This may be so. However, to the extent Plaintiff's contentions amount to an argument that other evidence or other inferences from the evidence could support a different finding, such is not the standard here. "The question is not . . . whether ALJ could have reasonably credited [the claimant's] testimony, but whether the ALJ was clearly wrong to discredit it." *Werner v. Comm'r, Soc. Sec. Admin.*, 421 F. App'x 935, 939 (11th Cir. 2011). The ALJ provided a detailed analysis of the evidence of record, supplied a rationale for her findings, and these conclusions are supported by the evidence she cites. "If the Commissioner's decision is supported by substantial evidence, this Court must affirm, even if the proof preponderates against it." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n. 8 (11th Cir. 2004). "We may not decide facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner.]" 357 F.3d at 1240 n. 8 (internal quotation and citation omitted).

A final note is in order. While it is clear that Plaintiff is experiencing real difficulties and challenges, the law defines disability as the inability to do *any* substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § § 416(I), 423(d)(1); 20 C.F.R. § 404.1505. The impairment must be severe, making the claimant unable to do his or her previous work, or any other substantial gainful activity which exists in the national economy. 42 U.S.C. § 423(d)(2); 20 C.F.R. § § 404.1505-404.1511. The only issue before the Court is whether the decision by the Commissioner that Plaintiff did not meet this standard

---

[5]For example, the ALJ noted that Plaintiff application for unemployment benefits "is in contradiction to a claim for disability" (R. 25).

is adequately supported by the evidence and was made in accordance with proper legal standards. As the Court finds that to be the case, the decision must be affirmed.

## Conclusion

For the reasons set forth above, the administrative decision is **AFFIRMED.** The Clerk is directed to enter judgment accordingly, terminate all pending matters, and close the file.

**DONE** and **ORDERED** in Orlando, Florida on August 4, 2016.

*David A. Baker*
DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record